JS-6

Michael R. Lozeau (State Bar No. 142893)
Victoria A. Yundt (State Bar No. 326186)
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
E-mail: michael@lozeaudrury.com
          victoria@lozeaudrury.com

Barak Kamelgard (Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. BORAX INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No. 2:23−cv−03784−KK−JPR<br><br>**CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS**, Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS**, LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, U.S. Borax, Inc. ("Defendant") owns and operates a facility at 300 Falcon Street, Wilmington, California, 90744, under Waste Discharger Identification number 4 19I002660 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of the manufacturing, storage, and distribution of boron-based compounds used for a variety of applications including fire retardants, smoke suppressants, fertilizers, insecticides, fungicides, and wood preservatives. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2819, covering "Industrial Inorganic Chemicals, NEC";

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014--0057-DWQ, and as amended by Water Quality Orders Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees with Notice of Intent ("NOI") coverage, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan

("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

WHEREAS, on February 7, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ;

WHEREAS, on May 17, 2023, LA Waterkeeper filed a complaint against U.S. Borax, Inc. in the Central District of California, Civil Case No. 2:23−cv−03784−KK−JPR ("Complaint");

WHEREAS, Defendant denies all contentions and allegations in the Complaint and the 60-Day Notice that Defendant is in violation of the General Permit and the Clean Water Act;

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles/Long Beach Inner Harbor and Los Angeles/Long Beach Outer Harbor ("Receiving Waters");

WHEREAS, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree

1  setting forth terms and conditions appropriate to resolving the allegations set forth in
2  the 60-Day Notice and Complaint without further proceedings;

3  **WHEREAS**, Plaintiff's initial settlement proposal asked Defendant to conduct
4  a thorough power wash and mechanical/hand washing (where necessary) to remove
5  built-up materials throughout the Facility that currently discharges storm water to the
6  harbor by November 1, 2023 and Defendant completed the requests project in
7  advance of the deadline at a cost of approximately $270,000;

8  **WHEREAS**, since the filing of the Complaint, Defendant anticipates spending
9  at least an additional $12 million in total to improve stormwater management at the
10  Facility and implement this consent decree;

11  **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
12  shall be made in compliance with all applicable federal, state and local laws, rules
13  and regulations.

14  **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
15  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
16  **FOLLOWS:**

17  1.  The Court has jurisdiction over the subject matter of this action pursuant
18  to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

19  2.  Venue is appropriate in the Central District Court pursuant to Section
20  505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the
21  alleged violations are taking place is located within this District.

22  3.  The Complaint states a claim upon which relief may be granted against
23  Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

24  4.  LA Waterkeeper has standing to bring this action.

25  5.  The Court shall retain jurisdiction over this action for purposes of
26  interpreting, modifying, or enforcing the terms of this Consent Decree, or as long
27  thereafter as necessary for the Court to resolve any motion to enforce this Consent

28

Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

## I. OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.      <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a. "BAT" means the Best Available Technology Economically Achievable.

    b. "BCT" means the Best Conventional Pollutant Control Technology.

    c. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f. "Design Storm" means the volume and flow rate of runoff produced from an 85th percentile, 24-hour storm event as defined in General Permit Section X.H.6.

    g. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

    h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

    i. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j. "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Mormon Island, Los Angeles, CA USA"[1].

k. "MIP" means a Monitoring Implementation Plan.

l. "PPT" means Pollution Prevention Team.

m. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

n. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

o. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p. "SMARTS" means the California State Water Resources Control Board's Storm water Multiple Application and Report Tracking System.

q. "SWPPP" means a Storm Water Pollution Prevention Plan.

r. "Term" means the period between the Effective Date and the "Termination Date."

s. "Termination Date" means the latest of:

　　i. Two (2) years from the completion of the Storm Water Capture and Recycling Project set forth at Paragraph 16; or

　　ii. seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to two (2) years from the completion of the Storm Water Capture and Recycling Project set forth at Paragraph 16.

t. "Wet Season" means the period beginning October 1st of any given calendar year and ending May 30th of the following calendar year.

---

[1] Available at https://forecast.weather.gov/MapClick.php?lat=33.7597&lon=-118.2642.

### III. COMMITMENTS OF THE SETTLING PARTIES

#### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the then current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement any additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement any additional BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility as set forth in this Consent Decree.  BMPs will be implemented to the extent they are determined to be effective and necessary to achieve BAT/BCT, but may be updated or discontinued to the extent they are not found to be effective and necessary.

14. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility on or before July 30, 2024. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor

shall be presumed correct for precipitation quantities and timing for purposes of this Consent Decree, absent a clear showing of error or malfunction.

15.   <u>Structural and Non-Structural BMPs for the Facility</u>: Commencing within forty-five (45) days of the Effective Date and, thereafter, during the Term, Defendant shall develop and implement the following BMPs at the Facility:

a.   Install permanent concrete berms, curbs, or similarly effective physical barriers or collection drains, manifolds, or piping or similarly effective collection systems designed to prevent storm water discharges from any point other than Discharge Points during a Design Storm, including specifically under the loading bays and along the portion of the perimeter of the Facility that abuts the Receiving Waters;

b.   Prior to the start of each Wet Season, annually by September 15th, Defendant shall conduct a thorough power wash to remove built-up materials throughout the portions of the Facility that are exposed to storm water. All power wash flows shall be captured with a vacuum truck, transferred into a holding tank, and the solids allowed to separate from the liquids. The liquid shall be (1) reused in the Facility's manufacturing operations; (2) hauled off site for alternative management; or (3) discharged to the POTW (if allowed by the Facility's wastewater discharge permit). All collected solids shall be properly disposed of or reprocessed off-site.

c.   During the Wet Season, Defendant shall cover or containerize all industrial materials that may be pollutant sources, pallets (except new, unused pallets stored at least 25 feet from the ship unloading conveyor belt), debris and scrap bins, and trash cans with waterproof tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate. Defendant shall clean each of these tarps to remove any

accumulated materials or dust at least once per week, within twenty-four (24) hours prior to a Forecasted Rain Event that is more than forty-eight (48) hours after the end of a prior rain event, and otherwise as needed.

d. During the Wet Season, Defendant shall implement a sweeping program using a PM-10 compliant street sweeper on all paved areas at least once per week, daily during ship loading events, and within twenty-four (24) hours prior to a Forecasted Rain Event that is more than forty-eight (48) hours after the end of a prior rain event and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

e. Prior to the start of each Wet Season, annually by September 15th, and until the Wet Season ends, Defendant shall deploy and secure new synthetic metal absorbing wattles/filters around all drain inlets that discharge to the receiving waters rather than a collection and reuse system. Such drain filters, at a minimum, shall consist of the following:

- a metal-absorbing catch basin filtration insert (witches-hat type or equivalent) designed to remove oil and sediment, fuels, and heavy metals at all storm drain outlets at Site A [See Facility Map attached hereto as Exhibit A], except that a catch basin filter insert may be removed if it causes backup and flooding of the nearby area, in which case Defendant will identify and install an alternative filter (or an additional BMP) that do not cause backup and flooding; and

- a metal-absorbing wattle at least 5-inch diameter and long enough to provide at least 12 inches of overlap at interfacing points and containing rice hull, activated carbon, and zeolite, rated to filter oil, debris, sediment, and heavy metals sufficient for deployment around all storm drain inlets at Site B [See Facility Map attached

hereto as Exhibit A] to be deployed prior to Forecasted Rain Events.

    f.   Defendant also shall deploy Storm Water Treatment Filter Socks using BiocharPeat media, or similarly effective media, at all of the Facility's drains—other than those in paragraph 15(e) above—that discharge to the receiving waters rather than a collection and reuse system.  During the Wet Season, as necessary, replace the synthetic wattles/filters at the drain inlets when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing zinc concentrations; and

    g.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event that is more than forty-eight (48) hours after the end of a prior rain event, involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained or uncovered debris bins and trash cans under cover.

16.   <u>Storm Water Capture and Recycling Project</u>. As soon as possible but not later than June 30, 2026, Defendant shall:

    a.   Complete the construction and installation of a storm water capture and recycling system at the Facility that accomplishes all of the following:

        i.   Completely contains and captures all storm water that would otherwise flow from the Facility untreated directly or indirectly to any receiving waters as a result of any and all Design Storms;

        ii.   Routes contained and captured storm water for use in the Facility's industrial processes;

        iii.   Contains sufficient storage and routing capabilities to ensure the capture and recycling system can contain and dispose of storm

water volumes resulting from a Design Storm within 24 hours of the beginning of any Design Storm;

   iv.  Disposes of all contained and captured storm water that is not lost to evaporation or reused in the Facility's industrial processes, by discharging all remaining storm water to a tie-in to the City of Los Angeles' municipal sanitary sewer system and routing to the City's Terminal Island Water Reclamation Plant; and

   v.  Has a capacity of the capture and recycling system that can capture and store an additional 18,000 gallons of storm water over and above the Design Storm.

b. Prepare an operations and maintenance plan to ensure the proper operation and maintenance of the maximum capacity of the capture and recycling system. The operations and maintenance plan shall be included as an attachment to the Facility's SWPPP and the Training Manual or Standard Operating Procedure required in Paragraph 29 below.

c. Subsequent to the implementation of the capture and recycling system, continue to maintain all of the BMPs identified in Paragraph 15 above, except for those drains that have been removed or no longer discharge to receiving waters as a result of the construction of the capture and recycling system.

d. Subsequent to the implementation of the capture and recycling system, if the storm water capture system described in this paragraph fills to the volume of a Design Storm, to the extent feasible and safe the Facility will deploy appropriately sized metal-absorbing wattles/filters, including the BMPs identified in paragraph 15 above, to reduce pollutants from any storm water discharges from the Facility resulting from any overflow or bypass of stormwater in excess of the capacity of the storm water capture and recycling system.

### B. SAMPLING AT THE FACILITY

17.     Defendant shall implement a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four Qualifying Storm Events as required by the General Permit (two in the first half of the year and two in the second half of the following year). Defendant shall sample the first two Qualifying Storm Events for each half of the year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. Any failure to collect samples as required by this Consent Decree, including without limitation as a result of insufficient discharge, shall be documented in the facility's records in a storm water event log and discussed in the annual report submittal to SMARTS, and any associated information (e.g., photographs, rain gauge data) maintained will be submitted to LA Waterkeeper by email within fifteen (15) days of a written request for such records by LA Waterkeeper.

18.     Sampling Parameters: All storm water samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1 as well as boron. Should Defendant determine it is necessary to conduct storm water discharge sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters. The applicable Table 1 action level for such purpose is the applicable Numeric Action Level (NAL), TMDL Numeric Action Level (TNAL), or Numeric Effluent Limitation (NEL) for each additional parameter, whichever is the most stringent, and if none exist, the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

19.     <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California-certified environmental laboratory for analysis will meet allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

20.     <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods sufficiently sensitive to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.  Defendant will promptly notify Plaintiff if a laboratory is unable to fully satisfy any such request.

21.     <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten days of receiving the laboratory report with the results.

### C. REDUCTION OF POLLUTANTS IN DISCHARGES

22.     Table 1 Numeric Action Levels: Defendant shall develop and implement BMPs to reduce pollutants in storm water discharged from the Facility to receiving waters (as opposed to captured and reused) to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Action Level |
|---|---|---|
| Zinc | 0.26 mg/L | Annual NAL |
| Aluminum | 0.75 mg/L | Annual NAL |
| N+N | 0.68 mg/L | Annual NAL |
| Iron | 1.0 mg/L | Annual NAL |
| pH | Less than 6.0 Greater than 9.0 s.u. | Instantaneous Maximum NAL |

23.     <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows:

a.  Where the sampling result is greater than or equal to the sum of the concentrations of any pollutant in any storm water sample from any Sample Location and all prior storm water samples collected for the

same pollutant from the same Sample Location in the same reporting year demonstrate that the annual average for that pollutant from that Sample Location will exceed the applicable annual Numeric Action Level specified in Table 1 if that pollutant is sampled four (4) times from that Sample Location in that reporting year;[2]

b. If any pollutant is sampled fewer than four (4) times from any Sample Location in a reporting year, and there was otherwise no Exceedance for that pollutant at that Sample Location pursuant to paragraph 23(a) above, then where the average concentration of that pollutant from all storm water samples from that Sample Location during that reporting year exceeds the applicable annual Numeric Action Level specified in Table 1.[3]

24.   <u>Action Plan for Table 1 Exceedances</u>: As of the Effective Date, and for the remainder of the Term, if Defendant has an unauthorized non-storm water discharge in violation of Paragraph 16, discharges storm water in smaller than a Design Storm (after implementation of the storm water capture project in paragraph 16), or storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating

---

[2] E.g., There is an Exceedance (a) where a sample from Sample Location #1 during the first QSE has a concentration for iron of 5 mg/L, and also (b) where samples from Sample Location #1 during the first, second, and third QSEs have concentrations for iron of 2 mg/L, 0.5 mg/L, and 2.5 mg/L, respectively, because, in either scenario, the annual average based on four QSEs at Sample Location #1 would be at minimum 1.25 mg/L regardless of the concentrations in further samples from that Sample Location.

[3] E.g., Where samples from Sample Location #1 during the first, second, and third QSEs have concentrations for iron of 1.2 mg/L, 1.1 mg/L, and 1.2 mg/L, respectively, but only three samples were collected for iron from Sample Location #1 during that reporting year, because the average based on four QSEs would be less than 1 mg/L, but the average of the three samples taken is greater than 1 mg/L.

the relevant discharge of pollutants for the Facility, achieving compliance with the non-storm water discharge prohibition, and/or eliminating discharges in smaller than a Design Storm ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within sixty days of the non-storm water discharge, the discharge in smaller than a Design Storm, or the receipt of the laboratory report demonstrating the Exceedance, as applicable. Defendant is not required to submit more than one Action Plan per calendar year prior to implementation of the storm water capture project in paragraph 16.

    a. <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric action level(s), the applicable unauthorized non-storm water discharge, and/or applicable discharge in smaller than a Design Storm; (2) an assessment of the source of each contaminant exceedance, the applicable unauthorized non-storm water discharge, and/or applicable discharge in smaller than a Design Storm; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric action level(s), the unauthorized non-storm water discharge prohibition, and/or Design Storm requirement, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

b. <u>Action Plan Proposed BMPs:</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 action levels in the Facility's storm water discharges:

 i. <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

 ii. <u>Drain Filters</u>: Installing additional or more effective drain filters.

 iii. <u>Evaluation of Existing BMPs</u>:  Replacing or increasing the replacement or maintenance schedule of existing BMPs.

c. <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 29 below.

e. <u>Action Plan Payments</u>: Defendant shall pay Two Thousand Five Hundred Dollars ($2,500.00) each time an Action Plan is submitted to LA Waterkeeper up to and including June 30, 2026 and Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper subsequent to June 30, 2026. Payments are due at the same

time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

25. <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during at least two Qualifying Storm Events in addition to the four Qualifying Storm Events from which samples are collected. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

26. <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct monthly dry weather visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All outdoor areas shall be inspected for accumulation of dust and materials handled at the Facility. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective at visually reducing the presence of mobilizable pollutants

at the Facility. Such inspections shall further include observation as to whether there are any unauthorized non-storm water discharges from the Facility.

27.  <u>Visual Observations Records</u>: Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 25 and 26. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

28.  <u>Employee Training Program</u>: Within sixty (60) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the General Permit requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree.

   a.  Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

29. <u>SWPPP Revisions</u>:

   a.  <u>Initial SWPPP Revisions</u>: To the extent not already incorporated, Defendant shall amend the Facility's SWPPP to incorporate the relevant requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper

within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  Within 30 days of the completion of the Storm Water Capture and Recycling Project required by Paragraph 16 above, the SWPPP shall also be amended to discuss and attach the operations and maintenance plan prepared for the Storm Water Capture and Recycling Project.

b.  <u>Additional SWPPP Revisions</u>:

   i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP (to the extent not already incorporated) to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

   ii.  Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such proposed changes and submit the complete, updated draft SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.  <u>Review of SWPPP</u>:  For any SWPPP updates pursuant to Paragraphs 29(a) and 29(b), LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete draft SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the draft SWPPP, Defendant shall consider each of the comments and proposed changes and either accept

them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the proposed SWPPP revisions, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised final SWPPP to SMARTS.

### E. COMPLIANCE MONITORING AND REPORTING

30. Every year during the Term, up to three LA Waterkeeper representatives or consultants (including an attorney) may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding a second additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, a second additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice (weekends and holidays excluded) prior to a Site Inspection in anticipation of wet weather and seventy-two hours notice during dry weather (weekends and holidays excluded). For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 60, and shall state the names and roles of all persons whom LA Waterkeeper will bring to the inspection. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated sampling location(s)

referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection. If LA Waterkeeper takes photographs and/or video recording, LA Waterkeeper shall provide Defendant with the photographs and/or video within fourteen calendar days after the Site Inspection. LA Waterkeeper agrees that all individuals participating in a Site Inspection will execute, as necessary, waivers, releases and similar agreements. During inspections, LA Waterkeeper's representatives must wear safety goggles, hard hats, vests, and appropriate clothing and footwear and remain in the presence of Defendant's representatives at all times. Defendant claims that some information gathered at a Site Inspection may contain confidential business and/or trade secret information, and as such, Plaintiff agrees that such confidential business and/or trade secret information obtained by LA Waterkeeper from Defendant as a result of or in connection with a Site Inspection shall be maintained as confidential. Such confidential business and/or trade secret information shall not be disclosed to any third party, except that such information can be presented to the Court to enforce compliance with this Consent Decree. Defendant shall bear the burden of demonstrating that information is a confidential business and/or trade secret. Site Inspections will be limited to a visit of the areas exterior to the buildings on site, and will not include access to the interior of the buildings at the Facilities or observation into the buildings from the exterior. Defendant reserves the right to limit or define physical site access as needed to accommodate safety or operational issues.

31. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a. Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or

correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b. Within five (5) business days of receipt by Defendant, send to LA Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

32. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree for the first four years of the Term by paying Twenty Thousand Dollars ($20,000.00).  Should the Term extend beyond June 30, 2028, Defendant shall pay Five Thousand ($5,000) for each additional year or partial year the Consent Decree remains in effect. In the event that there is an additional site inspection in a given year to resolve a dispute pursuant to Paragraph 30, in which case Defendant shall reimburse LA Waterkeeper an additional Three Thousand Five Hundred Dollars ($3,500.00) during such year. Payment shall be made within thirty (30) days of the Entry Date, and within thirty (30) days after any additional site inspection, as applicable. Should the Term extend beyond June 30, 2028, the annual compliance oversight payments shall be paid no later than July 1 of each such year, beginning with a payment on July 1, 2028. The payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

### F. Environmental Mitigation, Litigation Fees and Costs, Missed Deadlines, and Interest

33. <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in watersheds tributary to the Los Angeles/Long Beach Harbor, Defendant agrees to make a payment totaling One Hundred Twenty Thousand Dollars ($120,000.00) to the Rose Foundation made within thirty (30) days of the Entry date, payable to the "Rose Foundation for Communities and the Environment" and sent via certified mail, return receipt requested to Rose Foundation, 201 4th Street, Suite 102, Oakland , CA 94607. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

34. <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Two Hundred  Thousand Dollars ($200,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: "Lozeau Drury LLP" and delivered by overnight carrier to Michael Lozeau, Lozeau Drury LLP, 1939 Harrison Street, Suite 150, Oakland, CA 94612. Failure to submit payment as required under this paragraph will constitute breach of the Consent Decree.

35. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) for each missed deadline, not excused by Force Majeure. In the event that a deadline is missed, LA Waterkeeper shall notify Defendant. Upon notification by LA Waterkeeper, Defendant shall have a ten (10) day cure period. If not cured within ten (10) days, then the stipulated payment is owed. Such stipulated payments shall be

made by check payable to: "Rose Foundation for Communities and the Environment" and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be delivered by overnight carrier to the Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within thirty (30) days after the resolution of the event that precipitated the stipulated payment liability.

36.   <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 6% per year (0.5% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be made by check payable to "Rose Foundation for Communities and the Environment" and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be delivered by overnight carrier to the Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

**IV. DISPUTE RESOLUTION**

37.   This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.   <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution.

The Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) days of the date of the notice in an attempt to fully resolve the dispute no later than forty-five (45) days from the date of the notice.

39.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within forty-five (45) days of the meet and confer described in Paragraph 38, the Parties agree to request a settlement meeting before the Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. The Parties may agree in writing to extend any dates in this Section IV in order to further this Section's meet and confer procedure.

40.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

41.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised inor could have been raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     Subject to the terms and exclusions of the release contained in paragraphs 41 and 42 above, the Parties expressly waive any rights or benefits available under section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

44.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. MISCELLANEOUS PROVISIONS

45.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

46.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.  <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

48.  <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

49.  <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

50.  <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.  <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.  <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

53.  <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

54.   <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

55.   <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

56.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court.

57.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

58.   <u>Publicity</u>. During the Term, LA Waterkeeper shall not post a copy of this Consent Decree on its website or in any LA Waterkeeper publication or promotional media.

59.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party

seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event. If applicable, Defendant shall diligently file and pursue required applications for permits, consents, and approvals for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete all such BMPs by the deadlines set forth herein, and shall use reasonable good faith efforts to meet these deadlines. Defendant shall be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendant in obtaining any required governmental permits, consents, or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials prevent the attainment of deadline for a specific BMP. Such delays may be excused if all of the following requirements are met: (1) Defendant has notified LA Waterkeeper via email within ten (10) days of first learning about the anticipated delay; and (2) Defendant continues to exercise due diligence and reasonable good faith efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline. Any excused delay shall not excuse Defendant from implementing its other, unexcused obligations under this Consent Decree.

60.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Michael R. Lozeau (State Bar No. 142893)
Victoria A. Yundt (State Bar No. 326186)
Lozeau Drury LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
E-mail: michael@lozeaudrury.com
              victoria@lozeaudrury.com

If to Defendant:

Joe Pettigrew
Larry Tudor
U.S. Borax Inc. - Wilmington Operations
300 Falcon Street
Wilmington, CA 90744
Joe.Pettigrew@riotinto.com
Larry.Tudor2@riotinto.com

Michael Dillenbeck
U.S. Borax Inc. - Boron Operations
14486 Borax Road
Boron, CA 93516Michael.Dillenbeck@riotinto.com

Eliot Rasmussen
Corporate Counsel – Environment
4700 Daybreak Parkway, South Jordan, Utah 84009, USA
eliot.rasmussen@riotinto.com

Jomaire Crawford
Head of Litigation
601 13th Street NW, Washington D.C. 20007
jomaire.crawford@riotinto.com

With copies to:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
360 E 2nd St., Suite 250
Los Angeles, CA 90012
barak@lawaterkeeper.org
ben@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Steven E. Soule, State Bar No. 176124
Kirkland & Ellis LLP
555 South Flower Street
Los Angeles, California 90071
Tel: (213) 680-8400
E-mail: steven.soule@kirkland.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after

acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

8.      If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: June 14, 2024                    By: _____
                                             Bruce Reznik,
                                             Executive Director, Los Angeles
                                             Waterkeeper


Dated: June __, 2024                    By: _____
                                             Renny Dillinger
                                             General Manager, U.S. Borax Inc.

1 | acknowledgement of receipt via email by the receiving party. Any change of address
2 | or addresses shall be communicated in the manner described above for giving notices.

3 |      8.    If for any reason the Federal Agencies should object to entry of this
4 | Consent Decree or to any portion of this Consent Decree or the District Court should
5 | decline to approve this Consent Decree in the form presented, the Parties shall use
6 | their best efforts to work together to modify the Consent Decree within thirty (30)
7 | days so that it is acceptable to the Federal Agencies or the District Court. If the
8 | Parties are unable to modify this Consent Decree in a mutually acceptable manner
9 | that is also acceptable to the District Court, this Consent Decree shall immediately be
10 | null and void as well as inadmissible as a settlement communication under Federal
11 | Rule of Evidence 408 and California Evidence Code section 1152.

12 |      The Parties hereto enter into this Consent Decree and submit it to the Court for
13 | its approval and entry as a final judgment.

14 |
15 |      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
16 | as of the date first set forth below.

17 |
18 | APPROVED AS TO CONTENT

19 | Dated: June 14, 2024           By: _____
20 |                                 Bruce Reznik,
21 |                                 Executive Director, Los Angeles
22 |                                 Waterkeeper

23 | Dated: June 19, 2024           By: _____
24 |                                 Renny Dillinger,
25 |                                 General Manager, U.S. Borax Inc.

26 |
27 |
28 |

1    APPROVED AS TO FORM

2

3                                              LOZEAU DRURY LLP

4

5    Dated: June _14_ 2024              By: _Michael R. Lozeau_
6                                           Michael R. Lozeau
                                            Attorney for Plaintiff
7                                           Los Angeles Waterkeeper

8

9                                              KIRKLAND & ELLIS LLP

10

11   Dated: June 19, 2024              By: _Steven E. Soule_
12                                          Steven E. Soule
                                            Attorney for Defendant
13                                          U. S. Borax Inc.

14

15   **IT IS SO ORDERED.**

16                              **FINAL JUDGMENT**

17

18        Upon approval and entry of this Consent Decree by the Court, this Consent

19   Decree shall constitute a final judgment between the Plaintiff and Defendant.

20

21

22   Dated: _August 12, 2024_          CENTRAL DISTRICT OF CALIFORNIA

23

24

25                                     _____
                                       HONORABLE JUDGE KENLY KIYA KATO
26                                     United States District Court Judge

27

28

# EXHIBIT A

<u>Legend</u>



Property Boundary
Direction of Flow
Curbing (to prevent runoff)
Underground Storm Drain

  1  Storm Drain to Harbor

  A  Storm Water Sampling Location

<u>CASQA Best Management Practices</u>

SC-11 Spill Prevention Control and Cleanup.

SC-20 Equipment Fueling

SC-22 Vehicle and Equipment Repair

SC-30 Outdoor Loading/Unloading

SC-31 Outdoor Liquid Container Storage

SC-32 Outdoor Equipment Operations

SC-33 Outdoor Storage of Raw Material

SC-34 Waste Handling  and Disposal

SC-41 Building and Grounds Maintenance

SC-43 Parking Storage Area/ Maintenance

*The site is 100% impervious.
**Operations not conducted inside building are directly exposed to precipitation.
***There are no municipal storm drain inlets onsite.





N

Associates Environmental
16882 Bolsa Chica St. Suite 202
Huntington Beach, CA 92649
(714) 916-4953 Fax (714) 362-9085

| Description | US Borax, Inc. Storm Water Pollution Prevention Plan – Site Map | | |
|---|---|---|---|
| Job No. 1784 | Drawing Date 03-21-2016 – rev | Drawn By: JF | Drawing Version 1.1 |